THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RANDY STILL, Defendant; ST. MARY'S METHADONE MAINTENANCE CLINIC, Respondent.

Second Department, June 23, 1975

*Eugene Gold, District Attorney (Mark M. Baker* of counsel), for appellant.

*W. Bernard Richland, Corporation Counsel (Murray L. Lewis* and *L. Kevin Sheridan* of counsel), for respondent.

SHAPIRO, J. On this appeal the District Attorney of Kings County seeks reversal of so much of an order of the Supreme

Court at a Criminal Term as granted a motion to quash a subpoena duces tecum served on the St. Mary's Methadone Maintenance Treatment Clinic (St. Mary's).[1] The subpoena required it to produce all of its books and records relating to Randy Still, the defendant in this case, who has been indicted and charged with criminal possession of a controlled substance in the second degree, methadone. His indictment was based on his possession of an unlabeled bottle of methadone when arrested near St. Mary's. As a defense, he asserted that he was in lawful possession of the methadone, claiming it had been issued to him by St. Mary's. In support of this defense, he furnished the District Attorney with a letter dated January 14, 1974 addressed to his attorney, signed by Charlotte Evans, St. Mary's project director, which declared that the defendant had been a participant in St. Mary's treatment program since July, 1972; that he was taking 100 milligrams of methadone from August 14, 1972 through July 12, 1974; that during this period he received take-home medication on Fridays for Saturdays and Sundays and was authorized to have in his possession two bottles of methadone for weekends; and that when arrested "he had in his possession medication given to him by the program for the weekend".[2]

In an effort to meet and overcome the defendant's reliance upon St. Mary's letter, the District Attorney served the subpoena here in question. St. Mary's then moved to quash the subpoena on the ground that the information sought was confidential and privileged under Federal statute and regulations and the physician-patient privilege. The Criminal Term of the Supreme Court quashed the subpoena to the extent of precluding the People from subpoenaing the defendant's records at St. Mary's, but permitted the People to subpoena, as witnesses, employees of St. Mary's to obtain from them general information limited to the operations of St. Mary's.

The Criminal Term rejected St. Mary's reliance on the physician-patient privilege embodied in CPLR 4504 (subd [a]), citing *People v Newman* (32 NY2d 379) and section 3373 of

1. St. Mary's Methadone Maintenance Treatment Clinic is referred to as the St. Mary's Methadone Maintenance Program in the subpoena and in a Bureau of Narcotics and Dangerous Drugs letter, and in the appellant's brief variously as the St. Mary's Methadone Maintenance Center, St. Mary's Center, St. Mary's Methadone Treatment Center and St. Mary's Methadone Center.

2. It appears from the appellant's brief that Still was arrested with the bottle of methadone in his possession on a Tuesday, at least one day after the end of the preceding weekend.

the Public Health Law, which governs treatment for addiction maintenance and provides: "For the purposes of duties arising out of this article, no communication made to a practitioner shall be deemed confidential within the meaning of the civil practice law and rules relating to confidential communications between such practitioner and patient."

The Criminal Term also cited section 3371 (subd 1, par [b]) of the Public Health Law, which provides:

"1. No person, who has knowledge by virtue of his office *of the identity* of a particular patient or research subject, a manufacturing process, a trade secret or formula shall disclose such knowledge, or any report or record thereof, except: * * *

"(b) pursuant to judicial subpoena or court order in a criminal investigation or proceeding" (emphasis supplied).

But the Criminal Term concluded that "under the present status of the law with regard to the confidentiality of methadone center records" it was compelled to quash the subpoena, under the authority of *People v Newman (supra)* and its interpretation of the applicable provisions of the Federal legislation governing this subject, the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P. L. 91-513; 84 US Stat 1236) and the Drug Abuse Office and Treatment Act of 1972 (P. L. 92-255; 86 US Stat 65).

### THE LAW

While we agree with the Criminal Term in its conclusion as to the nonapplicability of the physician-patient privilege to the subpoena here under consideration, we do not agree with its interpretation of the applicable Federal statutes and its view as to the impact of *Newman.* For the reasons hereinafter set forth we modify the first decretal paragraph of the order under review, on the law, by striking therefrom the words "to the extent that the People are precluded from subpoenaing the defendant's records at the Clinic" and substituting therefor the following: "provided, however, that all books and records pertaining to the defendant, Randy Still, are to be delivered to the trial court, which shall allow the People, if it finds it necessary and proper to do so, to make such limited inspection and disclosure of those portions of the said books and records as it finds relevant to the guilt or innocence of said defendant on the charge mentioned and described in the indictment herein".

Subdivision (a) of section 3 of the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (US Code, tit 42, § 242a, subd [a]) provides in relevant part as follows:

"(a) * * * The Secretary [of Health, Education and Welfare] may authorize persons engaged in research on mental health, including research on the use and effect of alcohol and other psychoactive drugs, to protect the privacy of individuals who are the subject of such research by withholding from all persons not connected with the conduct of such research the names or other identifying characteristics of such individuals. *Persons so authorized to protect the privacy of such individuals may not be compelled in any Federal, State or local civil, criminal, administrative, legislative or other proceedings to identify such individuals"* (emphasis supplied).

Subdivision (c) of section 502 of the same act (US Code, tit 21, § 872, subd [c]), which subdivision appears under the subheading "Identification of research populations; authorization to withhold", provides:

"(c) The Attorney General may authorize persons engaged in research to withhold the names and other identifying characteristics of persons who are the subjects of such research. Persons who obtain this authorization may not be compelled in any Federal, State or local civil, criminal, administrative, legislative, or other proceeding to identify the subjects of research for which such authorization was obtained."[3]

These provisions talk in terms of protecting the privacy of individuals who are the subject of drug research "by withholding from all persons not connected with the conduct of such research the *names or other identifying characteristics* of such individuals" and bar testimony which would *"identify such individuals"* or *"identify the subjects of research"* (emphasis supplied). In *Newman* the question involved was whether the Director of the New York City Methadone Maintenance Treatment Program could be required to produce photographs of Negro males between the ages of 21 and 35 who were patients at a unit of the program prior to a specific date in 1972, so that those pictures could be shown to a witness to a shooting who had told the police that she believed she had previously seen the killer in the waiting room of the methadone mainte-

---

3. Such an order of authorization was issued on November 8, 1972 under the authority of the Attorney General to an official of the New York City Methadone Maintenance Treatment Program, of which St. Mary's is a part.

nance treatment program unit. Thus, the sole issue involved in *Newman* was whether under the Federal statute the director could be compelled *to divulge the identity of participants in the programs* to the witness and the police. The Court of Appeals held he could not be compelled to do so. In reaching its conclusion the court rejected the contention of the District Attorney that the absolute ban of the 1970 Act was modified by the 1972 Act. The latter act, the Drug Abuse Office and Treatment Act of 1972 (P. L. 92-255, 86 US Stat 65), as amended by Public Law 93-282 (tit III, § 303, subds [a], [b], pars [1], [2]; 88 US Stat 137, 138; US Code, tit 21, § 1175), on May 14, 1974, provides in part:

"§ 1175. Confidentiality of patient records — Disclosure authorization

"(a) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

"(b) * * * (2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives his written consent, the content of such record may be disclosed as follows: * * *

"(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure." * * *

"(c) Except as authorized by a court order granted under subsection (b)(2)(C) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient."

It is clear that this section, although it does speak of

identity in subdivision (a), deals primarily with the protection of records of diagnosis, prognosis or treatment of patients in the program, unlike the 1970 act, which concentrates on protection of the identity of the subjects of the program. And it is also clear that this section, also unlike the 1970 act, authorizes limited disclosure of information in such records where a court of competent jurisdiction finds "good cause therefor" after weighing "the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." What the Court of Appeals held in *Newman* was that this somewhat less absolute ban on disclosure of the contents of *records* of patients in the methadone treatment program in no way weakened the stronger ban against revealing identity contained in the 1970 act.

In adopting this view the court pointed out (p 386) that "the Special Action Office for Drug Abuse Prevention — established by the 1972 act to 'provide overall planning and policy and establish objectives and priorities for all Federal drug abuse prevention functions' (US Code, tit 21, § 1131, subd [a])" — had declared in an interpretative regulation, prepared in consultation with the Department of Justice and the Department of Health, Education and Welfare to deal comprehensively with the confidentiality provision of the 1972 act (37 Fed Reg 24636), that " 'if society is to make significant progress in the struggle against drug abuse,' the directors of 'drug abuse treatment programs' must be able 'to assure patients and prospective patients of anonymity' ", and also that "the identification of a person as a patient of a general practitioner or a hospital clinic is not ordinarily of great significance, but the identification of a person as an enrollee in a narcotic treatment program can, in and of itself, have profoundly adverse consequences" *(People v Newman,* 32 NY2d 379, 386–387, *supra).* In this connection the Court of Appeals also noted that "the regulation also recited that the 1972 Act was not designed to repeal or amend the confidentiality provision of the 1970 Act" (p 387).

Here, unlike *Newman,* the officials of St. Mary's who are seeking to quash the subpoena are not protecting the anonymity of the defendant against identification as a participant in the methadone treatment program, for he himself has disclosed his identity, by having his attorney furnish the St. Mary's comments to the District Attorney. Thus, by electing

to defend on the basis that the bottle of methadone was lawfully possessed by him in connection with his participation in St. Mary's program, he has himself waived the benefit of the statutory right to anonymity. His election to disclose that he was a patient in St. Mary's program obviated the need embodied in the provisions of the 1970 act for protecting the anonymity of methadone treatment participants in order not to discourage narcotic addicts from coming forward to enter the program lest by so doing they create the possibility of their addiction becoming a matter of public knowledge with all of its "profoundly adverse consequences". To quash the subpoena in this case, as the Criminal Term has done, on the theory that the statute mandates such a result in order to protect the anonymity of the patient, when he himself has not only revealed his identity but strenuously insists, as a defense to his prosecution, that he was a patient, would be giving it (the statute) a tortured and illogical construction.[4]

The effect of our determination is to allow the trial court to keep confidential those records which would neither aid in determining the veracity of the defendant's claim of lawful possession of the methadone found on him nor endanger the future of St. Mary's program, while allowing use at the trial under the court's supervision of records which would either aid the defendant in his case or serve the public interest by refuting the contents of the letter delivered by the director of St. Mary's to the defendant's attorney. By pursuing this course the proper administration of justice is served, with fairness to both sides.

RABIN, Acting P. J., HOPKINS, LATHAM and MUNDER, JJ., concur.

Order of the Supreme Court, Kings County, entered March 6, 1975, modified, on the law, by striking from the first decretal paragraph thereof the words "to the extent that the People are precluded from subpoenaing the defendant's records at the Clinic" and substituting therefor the following: "provided, however, that all books and records pertaining to the defendant, Randy Still are to be delivered to the trial

---

4. McKinney's Consolidated Laws of New York (Statutes, Book 1, § 143, p 288), which is directed to the construction of New York statutes, nevertheless states the rules applicable to the construction of statutes generally when it declares:

"A forced, unnatural, or ridiculous construction, which might tend to bring contempt upon the administration of justice is to be shunned, and the court must avoid interpretations which may reach an illogic never intended by the Legislature."

court, which shall allow the People, if it finds it necessary and proper to do so, to make such limited inspection and disclosure of those portions of the said books and records as it finds relevant to the guilt or innocence of the said defendant on the charge mentioned and described in the indictment herein".

As so modified, order affirmed·insofar as appealed from.