OPINION OF THE COURT
Shanley N. Egeth, J.
This is a motion made on behalf of the New York City Department of Health to quash a subpoena duces tecum served upon it by the defendant herein, which requires it to produce existing venereal disease records of plaintiff for the trial of this action.
Plaintiff herein seeks to recover damages from the defendant manufacturer of an intrauterine device, claiming it was unfit for use, in that it aggravated a gonorrhea infection allowing it to develop into a pelvic inflammatory *648 condition. Defendant will seek to prove that the condition was caused, worsened or otherwise impacted upon by the venereal disease to which the plaintiff was admittedly afflicted. The extent, duration, frequency and effect of the venereal disease upon the condition claimed, its treatment and cure, may become a significant trial issue.
In compliance with a prior order of this court (Dontzin, J., Oct. 24, 1977) plaintiff supplied the defendant with an authorization to procure release of the records which are the subject of the subpoena and this motion to quash.
' In moving to quash, the city asserts that it is barred by statute from complying with the subpoena by reason of an imposition of absolute confidentiality upon reports and records of cases of venereal disease. (Despite delivery of her written authorization plaintiff has now joined in the city’s present position on this motion.)
The mo,vont cites the following provisions of the New York City Health Code, New York State Public Health Law and New York State Sanitary Code as imposing total confidentiality and barring any disclosure even at the request of or pursuant to the authorization of the patient involved.
Subdivision (a) of section 11.07 of the New York City Health Code provides: “11.07. Confidentiality of reports and records, (a) Reports and records of cases of venereal disease, non-gonococcal urethritis, narcotics addictions, or drug abuse, and records of clinical or laboratory examination for any of such diseases shall not be subject to subpoena or to inspection by persons- other than authorized personnel of the Department.”
Similarly, section 2.32 of the State Sanitary Code (10 NYCRR 2.32) provides:
“2.32 Reports of gonorrhea and syphilis cases confidential. Records of the State Department of Health or of any local department of health or local health officer having custody of such records or of any laboratory, clinic or other institution relating to cases of gonorrhea or syphilis shall be confidential, except that access to such records other than laboratory reports by representatives of official public *649 agencies concerned with the control of such diseases may be permitted at the discretion of the State or local health officer having custody of such reports.”
The city contends that this statutory scheme reflects a vital public policy necessary to the control, cure and treatment of venereal disease. It asserts that unless absolute confidentiality is maintained, afflicted 'persons will not seek treatment or give information necessary to control and limit the disease, and that any breach of confidentiality would threaten irreparable harm to its program. By reason thereof the movant adopts the position that such records should not ever be made available to the patient or to anyone authorized by the patient. It is further claimed that the records may contain references to persons with whom the afflicted person has been in contact, and that the procurement of this information, and continued confidentiality thereof, is essential to fulfillment of the object of the control program.
At the outset it should be noted that while the subject New York City Health Code regulations are not the direct legislative enactment of any elected legislative body, certain sections may have the force and effect of State law. Although it is incorporated by reference in section 1706 of the New York City Charter, and it has been determined to constitute a constitutional delegation of legislative authority, the provisions of the health code are the product of the board of health and its personnel and subject to revision or amendment by it. As such, irrespective of the statutory origin of any given provisions of the code, this court deems its provisions similar or akin to regulations of other agencies exercising delegated rule-making powers, and accordingly, in the process of judicial construction, this court will not give it the same weight in determining public policy as it would give to a specific enactment of a legislative body.
The agency custodian of the records which are the subject of this motion advances the position that the literal language of its enacted regulation constitutes an absolute bar against their delivery, or as to the disclosure of the contents contained therein, to anyone other than its au *650 thorized personnel. This court cannot accept its overly restrictive construction of the rule which it has enacted. This regulation is subject to reasonable construction in accordance with recognized legal principles applicable thereto.
A number of rules of statutory construction should be considered in attempting to judicially construe the appropriate scope and parameters of the regulation now before this court. The Legislature has set down guidelines in Mc-Kinneys Consolidated Laws of New York (Book 1, Statutes). Proper construction should avoid “objectionable results” (id., § 141); and those contrary to reason and productive of illogical results (id., § 143). Words will not be given their ordinary meaning if they will cause absurd consequences (id., § 145); or result in hardship or injustice (id., § 146); or an unwise or mischievous result (id., § 148). Literal constructions which cause such results are to be avoided.
The literal position advanced by the movant herein would produce such unreasonable and absurd consequences. It seeks to maintain an absolute bar of confidentiality, even against the patient it claims its regulation is designed to protect, despite the fact that the patient may desire disclosure for his or her own purpose, or that the patient has already made public disclosure of the condition for which confidentiality is sought to be maintained.
This is clearly illustrated by the decision of the Appellate Division, Second Department, in the case of People v Still (48 AD2d 366). That case involved a statute of comparable purpose and circumstance analogous to the one at bar. There it was also claimed that the statutory confidentiality imposed by the relevant provision of the United States Code was required to effectuate a necessary drug abuse program. That statute contained an absolute bar against the revelation of the identity of patients who seek and procure treatment. Although the agency sought to quash the subpoena, contending that the integrity and life of its program would be jeopardized if compliance was required and absolute confidentiality was breached, the court rejected this view in the following language (p 372): “His election to disclose *651 that he was a patient in St. Mary’s program obviated the need embodied in the provisions of the 1970 Act for protecting the anonymity of methadone treatment participants in order not to discourage narcotic addicts from coming forward to enter the program lest by so doing they create the possibility of their addiction becoming a matter of public knowledge with all of its ‘profoundly adverse consequences’. To quash the subpoena in this case, * * * on the theory that the statute mandates such a result in order to protect the anonymity of the patient, when he himself has not only revealed his identity but strenuously insists * * * that he was a patient, would be giving it (the statute) a tortured and illogical construction.”
This quotation from Still is as applicable and relevant to the statute and issues raised in the motion at bar as if it were now first written as the rationale to determine the instant issue. As far as this court is concerned it is wholly determinative of the broad question raised herein.
Logic dictates that once it is established that the claimed citadel of absolute confidentiality is capable of breach under appropriate circumstances, definition of the limits of proper disclosure becomes a matter of degree to be determined judicially, based upon the particular facts and public policy involved in each particular case.
It would seem quite clear in light of the Still rationale that if publication of the confidential material by the object of the protection of statutory confidentiality vitiates the need therefor, such person or patient should have the volitional right to waive confidentiality for his own benefit or purpose (no useful purpose would be served by requiring a preliminary intermediate step of publication of confidential material as a fictional requisite to achieve waiver). Such a person should have an absolute right to procure his or her own record.
In this regard this court agrees with the result achieved by Mr. Justice Schackman in People v Muldrow (96 Misc 2d 854), which involved the identical regulation here at issue. There, the court held that despite the literal language of this regulation, considerations of public policy and a balancing of public interest required disclosure to facilitate *652 a rape prosecution on behalf of the object of statutory protection. While agreeing with the judicial balancing in that case, and the determination that disclosure would not there serve to destroy the protected program, this court does not agree with any determination or inference that confidentiality may not reasonably be waived by the person who w the object of a statutory protection of confidentiality.
Acceptance of the right of waiver of the protection of confidentiality by the patient, concomitantly requires invocation of the well-established doctrine of waiver of any privilege or right to bar disclosure in civil cases where a patient has affirmatively placed a medical or physical condition or other fact in issue in pending litigation.
This doctrine was first enunciated by our Court of Appeals in Koump v Smith (25 NY2d 287) when it held that commencement or defense of a civil action which placed a party’s physical or mental health in issue constitutes a waiver of the doctor-patient privilege. Since then, confidentiality and privilege have been consistently rejected under similar circumstances (Levine v Bornstein, 13 Misc 2d 161, affd 7 AD2d 995, affd 6 NY2d 892 [constitutional privilege against incrimination]; Prink v Rockerfeller Center, 48 NY2d 309 [interspousal privilege]; People v Al-Kanani, 33 NY2d 260, cert den 417 US 916 [physician-patient privilege]; Greenberg v CBS Inc., 69 AD2d 693 [reporters’ privilege in defamation action]; Maxie v Gimbel Bros., 102 Misc 2d 296 [statutory sealing of criminal record after acquittal of defendant]).
In support of its construction the movant cites McGowan v Metropolitan Life Ins. Co. (234 App Div 366) and Matter of Bakers Mut. Ins. Co. (Dept. of Health) (301 NY 21). These cases are distinguishable, and they do not require a different result. McGowan, which was decided long before Koump v Smith (supra), did not involve any waiver or effort on behalf of patient to procure disclosure. That case was determined upon grounds of privilege and public policy based upon its facts. The issue in Bakers has no relevance. The object of confidential protection was the report of a governmental investigative agency rather than a condition or report of treatment of an individual. The Bakers court *653 refused to release an underlying confidential investigative medical report as to circumstances surrounding a death. The public policy there involved was distinguishable and is understandable.
Although this court cannot agree with the movant as to the extent of confidentiality which is required to protect its program, it does recognize the worthwhile nature of the program. This court therefore acknowledges the necessity of maintaining that degree of confidentiality which is required to protect the program, subject of course, to the protection of other rights and interests which conflict or require balancing. The world of 1980 does not require the absolute bar of disclosure mechanistically sought by the movant, without regard to the wishes or welfare of the patient, the public, or other appropriately interested parties.
It would seem clear that a proper result should require a case-by-case judicial determination as to the requirements of justice in determining each application for disclosure. The need for the material sought should in each case be balanced against the actual harm or impact that the particular disclosure would inflict upon a publicly desirable program. Each application for disclosure should specifically set forth the necessity of the material sought, be made on notice to all affected parties and agencies, be determined only after a judicial in camera examination of the material contained in the record, and after a judicial determination of the extent of the relevance and necessity of disclosure which is required in the interest of justice.
In the instant case, after a conference with the court, the parties to this litigation have agreed that no material contained in the records relating to any nonparty third person is to be subject to disclosure. Additionally it is stipulated that to the extent it exists in the subject record, and it is deemed relevant by the court, the defendant may be advised solely as to the dates, doctor, hospital and place of any treatment rendered to this plaintiff for gonorrhea, and whether the results of any tests therefor were positive or negative.
Accordingly the motion to quash is denied. The Department of Health is directed to comply with the subpoena, *654 and forthwith deliver the subject record to Part XI, Room 331 for immediate in camera judicial inspection.