OPINION OF THE COURT
Robert L. Cohen, J.
The District Attorney, in presenting evidence to a Grand Jury, has served Grand Jury subpoenas for the testimony of two doctors who operated on defendant and discovered during the course of the operation alleged controlled substances *1076 which were removed from defendant’s stomach and turned over to the police.
The defendant has moved to quash those subpoenas on the ground that the physicians’ prospective testimony before the Grand Jury would violate CPLR 4504 (a), which bars disclosure, unless waived by the patient, of any information which was acquired by the physician in attending a patient in a professional capacity.[1]
FACTS
A felony complaint, based upon the sworn allegations of Police Officer Felz, charges the defendant with criminal possession of a controlled substance in the first degree. Officer Felz alleges that he was informed by Dr. Bibir Kshettry and Dr. Vellorí Paritivel that the defendant "did possess 36 ovoid black, green and orange balloons each containing a white powdery substance.”
According to the People, the defendant was brought to the emergency room of Bronx Lebanon Hospital Fulton Division in an unconscious condition and that emergency surgery was performed on her by Drs. Kshettry and Paritivel. During the operation, the doctors allegedly discovered and removed from the defendant’s stomach "twenty-nine (29) intact balloons containing heroin and seven (7) partial balloons containing heroin.”
The District Attorney has also served a Grand Jury subpoena upon Dr. Lydia Solomon, a pathologist, who took "custody of the controlled substance found in the defendant’s stomach.”
The People contend, in substance, that the testimony of these doctors before the Grand Jury will not violate the physician-patient privilege because, based upon the provisions of Public Health Law § 3373, there is an exception to the application of the privilege in a prosecution for unlawful possession of a controlled substance. (See, People v Fonseca, *1077 134 Misc 2d 1078 [Sup Ct, Queens County, Clabby, J.].) The People maintain further that both the Court of Appeals and Appellate Division, Second Department, have found that the physician-patient privilege does not apply to narcotic cases, citing People v Capra (17 NY2d 670), People v Fuller (24 NY2d 292), Matter of Grand Jury Investigation of Onondaga County (59 NY2d 130), and People v Still (48 AD2d 366).
In sum, the People argue that the Legislature did not intend "the privilege to protect drug traffickers * * * that the public’s interest in ridding itself of dangerous drugs outweighs the physician-patient privilege.”
The defendant argues that, except for People v Fonseca (supra), a case indistinguishable from the facts at bar, all of the cases relied upon by the People are inapposite. Moreover, defendant maintains the applicability of Public Health Law § 3373 is limited to those specific duties imposed upon physicians under article 33 of the Public Health Law, which does not include a physician’s duty to report to the police information acquired while operating on a patient.
I believe defendant’s position to be the correct one, and accordingly, grant the motion to quash the Grand Jury subpoenas issued to Drs. Kshettry, Paritivel, and Solomon.
A. PUBLIC HEALTH LAW § 3373
Public Health Law § 3373 is entitled "Confidential communications.” It reads, as follows: "For the purposes of duties arising out of this article, no communication made to a practitioner shall be deemed confidential within the meaning of the civil practice law and rules relating to confidential communications between such practitioner and patient.”
In Fonseca (134 Misc 2d 1078, supra), the court found that the evidence before the Grand Jury, consisting of testimony from a nurse who witnessed the surgical removal of 70 packets of cocaine, did not violate the privilege contained in CPLR 4504 (a). The court stated that although the testimony fell within the meaning of CPLR 4504, "I am of the opinion that an individual who carries or possesses 70 packets of cocaine within her body should not benefit from this statutory privilege. This is a situation where the rights of the public have to be compared to the purpose of confidentiality posed in the legislative enactment of the physician-patient privilege law.” (Supra, at 1079.)
The Fonseca court also specifically held "as a matter of law *1078 that section 3373 [of the Public Health Law] is applicable to article 220 of the Penal Law.” (People v Fonseca, 134 Misc 2d, supra, at 1080.)
Thus, Fonseca (supra) supports the People’s position that (1) there is a public interest exception to the privilege in narcotic cases, and (2) Public Health Law § 3373 applies to a prosecution for possession of a controlled substance under article 220 of the Penal Law. I respectfully disagree, however.
B. THE PHYSICIAN-PATIENT PRIVILEGE
The physician-patient privilege is "purely statutory” and is designed " 'to protect those who are required to consult physicians from the disclosure of secrets imparted to them; to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment, or disgrace to patients’ ”. (Matter of Camperlengo v Blum, 56 NY2d 251, 254.) The privilege must be "construed in accordance with its purpose— 'to encourage full disclosure by the patient so that he can secure appropriate treatment from the physician’ * * * but is to be given 'a broad and liberal construction to carry out its policy’ * * * CPLR 4504 (subd [a]) proscribes disclosure by a hospital or doctor, among others, of information 'acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.’ ” (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 134, supra.)
NO PUBLIC INTEREST EXCEPTION
There is no public interest exception to the physician-patient privilege. (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 135, supra.) In Onondaga, the District Attorney was investigating the homicide of a woman who was stabbed to death, and it was believed that she stabbed her assailant as well. The District Attorney issued a subpoena to a hospital for the medical records of any person treated for a stab wound caused by a knife. The hospital moved to quash, one of the grounds being that the subpoena violated the physician-patient privilege. County Court denied the motion holding that the public’s interest in investigating crime outweighed the physician-patient privilege. The Appellate Division, Fourth Department, reversed, stating that there *1079 was no public interest exception to the physician-patient privilege, but only those exceptions set forth by statute.
The Court of Appeals in Onondaga (supra) affirmed, specifically rejecting the District Attorney’s contention "that the statutory privilege must yield to the overriding public interest in the investigation of a homicide” (59 NY2d, supra, at 135).[2] The court reached its conclusion, that there was no public interest exception to the privilege, because of the absence of any legislative intention to create an exception, and then noted "specific exceptions to the physician-patient privilege have been enacted by the Legislature” (supra, at 135). The court listed those exceptions and referred to "Public Health Law, § 3373 [abrogating the privilege as to controlled substance]” as one. (Supra, at 136.)
In Matter of Camperlengo v Blum (56 NY2d 251, 255, supra) (a Medicaid investigation into alleged fraudulent billing practices), the court also noted instances where the Legislature abrogated the privilege "to effectuate some other public policy, such as the detection and prevention of child abuse (Family Ct Act, § 1046, subd a, par [vii]) or the treatment of narcotic addiction (Public Health Law, § 3373).” (Supra, at 255; emphasis added.)
I do not construe the above references in Onondaga (supra) and Camperlengo v Blum (supra) as "holdings” regarding the scope of the exception in Public Health Law § 3373, since neither case dealt with that statute or a prosecution for criminal possession of a controlled substance under article 220 of the Penal Law.
Significantly, the Onondaga court strictly construed the exception contained in Penal Law § 265.25, the statute under consideration, which requires "physicianfs] attending or treating the case” to report certain wounds to the police authorities, including "a wound which is likely to or may result in death and is actually or apparently inflicted by a knife”. The court noted "that the legislatively declared exception for knife wounds is limited to those likely to result in death [which] compels the conclusion that less serious knife wounds are not within the mandate of section 265.25 of the Penal Law” and *1080 that "information concerning treatment of such wounds is not excluded from the privilege provided by CPLR 4504.” (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d, supra, at 136.)
Similarly, the exception contained in Public Health Law § 3373 is a limited one, and should be strictly construed in accordance with its terms, i.e., "for the purposes of duties arising out of this article [33 of the Public Health Law]” (emphasis added). For example, under article 33 a duty is imposed upon a physician to "report promptly to the commissioner [of Health] * * * the name and, if possible, the address of, and such other data as may be required by the commissioner with respect to, any person under treatment if he finds that such person is an addict or a habitual user of any narcotic drug” (Public Health Law § 3372; emphasis added).
At bar, the People do not claim that the defendant was under treatment as an addict or that she is an habitual user of narcotic drugs, nor do the People claim that the physicians subpoenaed to testify had a reporting duty pursuant to any provision of article 33 of the Public Health Law. Thus, I do not construe the scope of the exception contained in Public Health Law § 3373 as broadly as the People do; moreover, the unambiguous language of Public Health Law § 3373 clearly limits its applicability to those duties specified in article 33 of the Public Health Law, none of which includes a duty to report to police authorities information acquired while operating on a patient (compare, e.g., Penal Law § 265.25 [making it a misdemeanor for a doctor or hospital to fail to report certain wounds caused by a gun or firearm];* see also, Matter of Grand Jury Investigation of Onondaga County, 59 NY2d, supra, at 135-136).
Finally, there is no appellate decision, as the People maintain, holding that Public Health Law § 3373 abrogates the physician-patient privilege in narcotic cases under all circumstances. The cases relied upon by the People in this regard are not apposite.
In People v Capra (17 NY2d 670, 671 [1966], supra), the defendant sustained injuries in an accident and was brought to a hospital where a "neurologist removed defendant’s shoes and socks in order to do a test on the soles of defendant’s feet”. (17 NY2d, supra, at 671.) A packet fell out of defendant’s right sock, which was turned over to the police and determined to be heroin. The court held "[t]he accidental *1081 finding of heroin in defendant’s clothing did not constitute * * * a disclosure of information acquired in a professional capacity by a physician from a patient. We pass on no other question. ” (17 NY2d, supra, at 671; emphasis added.)
In dissent, Judge Van Voorhis specifically noted that the majority did not mention Public Health Law § 3304 (2) (the predecessor statute to Public Health Law § 3373) as a basis for its ruling, "nor does it appear * * * to be applicable.” (People v Capra, 17 NY2d, supra, at 673.)[3]
Present section 3373 of the Public Health Law (L 1972, ch 878, §2) is part of article 33 and is derived from former sections 3304 (2); 3334 (3) and 3389 (3) of the Public Health Law. Section 3373 is no broader in its language than former sections 3304 (2); 3334 (3) and 3389 (3), and in fact is more specific, reading "For the purposes of duties arising out of this article” (Public Health Law § 3373), rather than "For the purposes of this article” (Public Health Law former § 3304 [2]).
In Capra (supra) the majority did not rely upon the exception contained in Public Health Law former § 3304 (2), as pointed out by Judge Van Voorhis, but found the physician-patient privilege inapplicable under the facts, because the disclosure of information was not "acquired in a professional capacity”. (People v Capra, 17 NY2d, supra, at 671.)
In People v Fuller (24 NY2d 292 [1969], supra), after conviction, defendants challenged their certifications as addicts to. the custody of the Commissioner of the Narcotic Control Commission. Medical evidence and statements defendants made to doctors were admitted into evidence at their addiction hearings. They argued such evidence violated CPLR 4504, the physician-patient privilege. In finding that the privilege was not violated, the court noted that the medical evidence and statements were not received in evidence at the trial of the defendants on the criminal charges, but were received only at their addiction hearings on the issue of whether they were addicts requiring treatment.
The Court of Appeals stated "the purpose of the privilege is to induce persons to seek medical assistance by removing any fear that they will suffer embarrassment or disgrace or that *1082 any information disclosed to the physician will not be used adverse to them” (24 NY2d, supra, at 307; emphasis added). The court found that certification as an addict, after conviction, and commitment to the custody of the Commissioner, was not a finding adverse to the addict’s interest, but was rehabilitative in purpose to afford treatment to the addict under the Narcotics Control Law. Accordingly, the court found the privilege not applicable. (See, People v Fuller, 24 NY2d, supra, at 306-307.)
Finally, in People v Still (48 AD2d 366, supra), the Appellate Division, Second Department, did not find that Public Health Law § 3373 excluded the privilege’s application to the facts at issue there. The defendant in Still was charged with criminal possession of a controlled substance, to wit, methadone. He asserted as a defense that the methadone was given to him by a drug treatment program and therefore his possession was lawful. In support of this defense, he submitted to the District Attorney a letter from his program’s director stating that he was a participant in St. Mary’s Methadone Maintenance Treatment Clinic and that " 'he had in his possession medication given to him by the program for the weekend.’ ” (48 AD2d, supra, at 367.)
The District Attorney subpoenaed St. Mary’s records regarding defendant, and St. Mary’s moved to quash. The court upheld the subpoena and permitted the District Attorney to make a limited inspection and disclosure of those portions of the books and records relevant to the issue of the defendant’s guilt or innocence, because defendant "himself waived the benefit of the * * * right to anonymity.” (People v Still, 48 AD2d, supra, at 372; emphasis added.)
In summary, the People’s reliance upon Capra, Fuller, and Still (supra) is misplaced. In my opinion, those cases are not precedent for the proposition that Public Health Law § 3373 abrogated the privilege in all prosecutions for a violation of article 220 of the Penal Law. Capra did not even mention the Public Health Law exception to the privilege; Fuller dealt with proceedings after conviction, whose purpose was deemed to be rehabilitative and not adverse to the individual; and Still involved a waiver based upon the defense asserted by the defendant.
At bar, the physicians (Drs. Kshettry and Paritivel) acquired information while attending defendant in a professional capacity and their evidence is, in my opinion, subject to the privi *1083 lege of CPLR 4504 (a). Dr. Solomon who allegedly took "custody of the controlled substance found in defendant’s stomach” acquired her information as a result of her relationship to the hospital, and her evidence is similarly subject to the privilege of CPLR 4504 (a).
Based upon the foregoing, I find that Public Health Law § 3373 is not applicable to this criminal prosecution, and that the physician-patient privilege contained in CPLR 4504 (a) bars elicitation of any evidence or information acquired from defendant while she was attended in a professional capacity.
Accordingly, the defendant’s motion to quash is, in all respects, granted.

. CPLR 4504 (a), in relevant part, reads: "Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing or dentistry shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. The relationship of a physician and patient shall exist between a medical corporation * * * and the patients to whom they respectively render professional medical services.”

. The court cited People v Decina (2 NY2d 133) and People v Murphy (101 NY 126), where the privilege was upheld "as to information gained by a physician while treating a patient defendant accused of homicide.” (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 135; see also, People v Petro, 122 AD2d 309-310.)

. Former section 3304 (2) of the Public Health Law reads: "For the purposes of this article, no communication made to a physician shall be deemed confidential within the meaning of the provision of the civil practice act relating to confidential communications between physician and patient.” (L 1953, ch 879, eff June 1, 1954.)