OPINION OF THE COURT
Joseph S. Calabretta, J.
The defendant herein is charged with rape in the first degree, rape in the second degree, sodomy in the first degree, sexual abuse in the first degree, sexual abuse in the second degree and endangering the welfare of a child. The defendant Felton Gwaltney, Sr., has moved for an order suppressing statements made by him on September 12, 1986 to a caseworker at the Bureau of Child Welfare, which statement the People seek to introduce at trial. A Huntley hearing was held on December 10, 1987 and continued on January 5, 1988 and February 2, 1988 and March 30, 1988. The People called Bureau of Child Welfare caseworker Sandy DeVita as a witness.
*75 FINDINGS OF FACT
Sandy DeVita testified for the People as follows: she was an investigator for Special Services for Children in September 1986, and was employed at their Archer Avenue office and had been for approximately two years. Ms. DeVita investigated cases of alleged child abuse and ascertained whether they were indicated or unfounded. Her first contact with the Gwaltney case came about when Mrs. Gwaltney had been calling on September 11, 1986, trying to find out who had been assigned her case. Ms. DeVita directed her to a supervisor who would assist her. Later that afternoon Ms. DeVita was assigned the case, called Mrs. Gwaltney back that afternoon and requested she come in and speak to her. At about 4:00-4:30 p.m., Mrs. Gwaltney came in and Ms. DeVita interviewed her. She explained the allegations, possible outcomes, and her rights. Mrs. Gwaltney denied the allegations, said her daughter Monique had psychological problems, namely, she lied frequently and she disobeyed, and that she believed Monique had run away because she faced punishment for disobeying. Mrs. Gwaltney also averred that this was the first time she had heard of the sexual abuse by the father and son. Further, she stated her husband did not have a drinking problem.
In the late afternoon of September 12, 1986, Mr. Gwaltney came to Ms. DeVita’s office per her request. He called that morning in response to a request through Mrs. Gwaltney by Ms. DeVita. The interview lasted one-half hour to 45 minutes. During the interview, Ms. DeVita testified that Mr. Gwaltney did not indicate that he at any time wished to leave, or that he did not want to speak with her. He stated his wife and himself were definitely not getting along and that he definitely did not have sex in his daughter’s butt. He claims Monique had exaggerated and he had promised he would never do it again. He claims that when he came home very drunk, he would go into Monique’s room, tell her to come out into the kitchen and he then admitted he touched her "down under”. He stated it definitely did not happen when she was 8 or 9 years old. He also said his wife had thrown him out of the house for six months because Monique had told the mother. He stated it was his wife’s decision to let him come back if it was okay with Monique. He claimed the last time anything took place between himself and Monique was six months prior to this interview. He says he never ejaculated in her presence *76 and denied ever threatening Monique that she should not tell her mother. He claims Monique was willing and never put up a fight. When Ms. DeVita had gotten Mr. Gwaltney’s statement, she did not tell him that anything he told her could be used against him in a court of law. Ms. DeVita had given form 555-C addressed to Mr. and Mrs. Gwaltney to Mrs. Gwaltney the day before to take with her. This form obviously states what persons can do if they disagree with an indicated or unfounded report of child abuse and neglect. She indicated it was the custom to give only one of these forms per family. She had not inquired whether Mr. Gwaltney had seen this form or not, or whether he understood his rights in regard to a child abuse case.
CONCLUSIONS OF LAW
Section 411 of the Social Services Law entitled "Findings and purpose” states the purpose of this title is to encourage more complete reporting of suspected child abuse and maltreatment. This increased reporting will prevent the further suffering of injury and impairment of children. Further, section 413 requires that certain persons and officials, including social services workers, to report when they have reasonable cause to suspect a child coming before them in their professional judgment or official capacity is an abused or maltreated child. Also, they are required to report when they have reasonable cause to suspect that a child is an abused or mistreated child where the parent, guardian, etc., states from personal knowledge facts, conditions or circumstances which if correct would render the child an abused or maltreated child. Moreover, section 414 does not limit those who may report suspected child abuse or maltreatment. Any person who has reasonable cause to suspect may make a report. Sandy DeVita, the caseworker for the Bureau of Child Welfare, was required by statute to make a report of the suspected child abuse and maltreatment in the instant case, and therefore acted within the scope of her authority. Furthermore, section 415 states explicitly: "Written reports from persons or officials required by this title to report shall be admissible in evidence in any proceedings relating to child abuse or maltreatment.”
Accordingly, the court finds that the statements made by defendant Felton Gwaltney, Sr., to the caseworker would be admissible. Defendant contends that these statements should *77 not be admitted because he was not informed that anything he told Ms. DeVita could be used against him in a court of law.
The Supreme Court in Miranda v Arizona (384 US 436) held that the prosecution may not use statements, whether exculpatory or inculpatory, that stem from custodial interrogation of the defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Custodial interrogation has been defined by the courts as initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.
In the instant case, defendant was free to leave at anytime during the questioning. In fact, pursuant to her request, Mr. Gwaltney called to come down to see Ms. DeVita. The questioning was not being conducted by a law enforcement officer but merely a caseworker for the Bureau of Child Welfare. Although the court notes that this caseworker had a duty to report suspected cases of child abuse or maltreatment, however, this does not make Ms. DeVita an agent of the police, no more so then would we consider a physician who is required to report cases of child abuse or maltreatment acting as an agent of the police. The statements made to Ms. DeVita are admissible.
It should be noted, however, in the instant case that the caseworker had given the defendant’s wife the day before a letter (hereinabove referred to as form 555-C) which was addressed to Mr. and Mrs. Gwaltney. Said letter, in substance, stated the purpose of the interview, possible outcomes of the investigation and their rights if a determination is made of child sex abuse. Evidently it was the custom of the office to only provide one of these forms per family. This court firmly believes that it can hardly be expected in cases that by handing one copy of form 555-C to one spouse it will be forwarded to the other spouse, or that the contents contained therein would be imparted to that spouse. It is suggested that a better practice would be for the caseworker to hand the above form to each interviewee, and that this procedure would not add any greater expense to the Bureau of Child Welfare.
Accordingly, the defendant’s motion is denied in its entirety.