OPINION OF THE COURT
Eugene J. Berkowitz, J.
Is the physician-patient privilege violated if doctors, and/or other persons present during a surgical procedure to remove controlled substances swallowed by a patient, subsequently testify before a Grand Jury or at trial?
This is the issue raised by the defendant, herein, as part of his omnibus motion submitted to the court.
The defendant, indicted for criminal possession of a controlled substance in the first degree (four ounces or more of cocaine), is seeking the following relief:
(1), (2) and (3) inspection of the Grand Jury minutes and dismissal of the indictment; (4) an order precluding trial testimony of any doctors, medical personnel and Police Officer Paterson concerning alleged narcotics recovered from the defendant’s stomach during surgery on the ground that admission of such testimony would be in violation of the physician-patient privilege pursuant to CPLR 4504 (a); (5) a Huntley hearing; (6) a Mapp hearing; (7) a bill of particulars and discovery and inspection; (8) exculpatory material; (9) further motions.
The first, second and third branches of the motion for the inspection and transcription of the Grand Jury minutes and dismissal of the indictment is granted to the extent that the court has examined the Grand Jury minutes. Having examined the Grand Jury minutes, the court finds sufficient legal evidence to have been adduced to sustain the indictment. Having also examined the District Attorney’s charge, the court further finds that the Grand Jury was properly instructed on the applicable law (People v Calbud, Inc., 49 NY2d 389) and that the indictment is not defective.
The defendant’s contention that the testimony given by the police officer, who was present during surgery, was incompetent and inadmissible by virtue of the physician-patient privilege pursuant to CPLR 4504 (a) is without merit.
In the case at bar, the defendant was admitted to Elmhurst General Hospital to undergo emergency surgery. He had voluntarily entered the hospital complaining of stomach pains *706 and difficulty in moving his bowels, having swallowed packages of alleged controlled substances. Officer Paterson, employed by the Health and Hospitals Corporation, was on duty at the time the surgical procedure was to take place on the defendant, and was requested to be present. The officer observed the surgery, and vouchered 41 packages of substance that were, in fact, removed from the defendant’s stomach and intestines. Officer Paterson, in turn, turned them over to an officer of the 110th Precinct who, thereafter, placed the defendant under arrest.
CPLR 4504 (a) states in part as follows: "Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing or dentistry shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
It is the opinion of this court that this privilege does not extend to, or, in any way, prevent Police Officer Paterson from testifying with respect to her observations during the surgical procedure. The information she obtained and related to the Grand Jury was not acquired by attending a patient in a professional medical capacity. (See, Matter of Grand Jury Investigation, 59 NY2d 130, 134.)
The physician-patient privilege, created by our Legislature, is designed " 'to protect those who are required to consult physicians from the disclosure of secrets imparted to them; to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment, or disgrace to patients’ ”. (Matter of Camperlengo v Blum, 56 NY2d 251, 254; Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, V., M.D., P. C. v Kuriansky, 69 NY2d 232.)
Therefore, testimony by this officer to the Grand Jury was of a sufficient legal basis upon which the Grand Jury could reach a determination.
The fourth branch of the motion precluding trial testimony of any doctors, medical personnel and Police Officer Paterson concerning alleged narcotics recovered from the defendant’s stomach during surgery as a violation of the physician-patient privilege is denied.
For the reasons set forth above, it is the opinion of the court that Police Officer Paterson need not be precluded from testifying to her observations, at the time of trial.
*707 The defense, in support of its argument that the physicians and any other medical personnel in attendance during the defendant’s surgery be precluded, relies on the case of People v Saaratu (143 Misc 2d 1075). In that case, the court held that the testimony of two doctors who operated on the defendant and discovered balloons containing heroin in his stomach, and the pathologist who took custody of said balloons, were required to comply with the restraints of the physician-patient privilege, and that article 33 of the Public Health Law did not require a physician to report to the police information acquired while operating on a patient.
This court believes that under the circumstances of this matter such testimony should be allowed at trial. (See, People v Fonseca, 134 Misc 2d 1078.)
In Fonseca (supra), the defendant possessed 70 packets of cocaine within her body, which were surgically removed at Elmhurst General Hospital. The defendant sought dismissal of the indictment, in that the nurse who witnessed the surgery and testified before the Grand Jury violated the physician-patient privilege.
The court held that although the testimony of the nurse came within the meaning of CPLR 4504, the defendant should not benefit from the statutory privilege of physician-patient. "This is a situation where the rights of the public have to be compared to the purpose of confidentiality posed in the legislative enactment of the physician-patient privilege law.” (Supra, at 1079.) The court then found that as a matter of law, section 3373 of the Public Health Law was applicable to article 220 of the Penal Law.
The court’s decision in Saaratu (supra), rendered exactly two years after Fonseca (supra), reached an opposite conclusion regarding the applicability of Public Health Law § 3373 to article 220 of the Penal Law.
This court, having researched the case law and statutes pertaining to the physician-patient privilege and its application with regard to controlled substances and criminal proceedings, concludes that the testimony in criminal proceedings of medical personnel pertaining to the surgical removal of controlled substances, internally secreted and illegally possessed, is not in violation of the physician-patient privilege.
Article 33 of the Public Health Law is known as the New York State Controlled Substances Act. It was adopted by our *708 Legislature in 1972 following the enactment by Congress, in 1970, of the Controlled Substances Act (21 USC § 801 et seq.).
Historically, New York’s attempt to control drugs began at the outset of the 20th century, due to an increase in drug users and addicts. As drugs became linked with violent crimes, a climate of fear shared by the public and the Legislature resulted in recourse to the penal codes and criminal sanctions. (See, Quinn and McLaughlin, The Evolution and Present Status of New York Drug Control Legislation, 22 Buffalo L Rev 705, 707-708 [1973].)
The passage of article 33 of the Public Health Law required an alteration of the definition of dangerous drugs as they then existed in our Penal Law. (22 Buffalo L Rev, op. cit., at 732.)
At present, Penal Law article 220 ("Controlled Substances Offenses”) defines "unlawfully” as a "violation of article thirty-three of the public health law” (Penal Law § 220.00 [2]), and "controlled substance” as "any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law” (Penal Law § 220.00 [5]).
Clearly, the two laws are intertwined, and it was not the legislative intent that they be mutually exclusive and enforced in a vacuum to each other.
The following sections of Public Health Law article 33 are pertinent to the issue at hand:
Section 3301:
"Unless otherwise expressly provided, or unless the context otherwise requires:
"(a) The provisions of this article shall govern and control the possession, manufacturing, dispensing, administering and distribution of controlled substances with respect to any matter, act or omission arising or occurring on or after the effective date hereof’ (emphasis added).
Section 3304: "a. It shall be unlawful for any person to * * * possess, have under his control * * * or transport a controlled substance except as expressly allowed by this article.”
Section 3371:
"1. No person, who has knowledge by virtue of his office of the identity of a particular patient * * * shall disclose such knowledge, or any report or record thereof, except * * *
"(b) pursuant to judicial subpoena or court order in a criminal investigation or proceeding”.
*709 Section 3373: "For the purposes of duties arising out of this article, no communication made to a practitioner shall be deemed confidential within the meaning of the civil practice law and rules relating to confidential communications between such practitioner and patient.” (See, 10 NYCRR 80.109.)
The court, in Saaratu (143 Misc 2d, supra, at 1081) determined that these provisions did not create an exception to the physician-patient privilege because "the unambiguous language of Public Health Law § 3373 clearly limits its applicability to those duties specified in article 33 of the Public Health Law, none of which includes a duty to report to police authorities information acquired while operating on a patient”.
Although Public Health Law article 33 generally deals with the licensing provisions of physicians and sets forth guidelines to carefully monitor the possession and dispensing of controlled substance by such licensed persons, it should not be so narrowly construed as to hinder the prosecution of a person’s violation of article 220 of the Penal Law. When viewed in its totality, it becomes clear that the legislative intent was to allow physicians to provide information to law enforcement officials when criminal activity has occurred. "Doctors must report promptly to the Commissioner of Health the name— and if possible, the address — of any person under their treatment who is an addict. Unless they originate in the course of a criminal proceeding, these reports are confidential and may be used only for statistical, epidemiological or research purposes. Reports originating in the course of a criminal proceeding may be disclosed to law enforcement agencies, however. In fulfilling his duties under this Act, a doctor cannot rely on a doctor-patient privilege. The statute specifically requires that for the purposes of reporting no communication made to a practitioner shall be deemed confidential within the meaning of the New York rules relating to confidential communications between practitioner and patient.” (22 Buffalo L Rev, op. cit., at 730-731 [emphasis added].)
Article 33 of the Public Health Law, as noted above, governs possession of controlled substances with respect to "any matter” (§ 3301 [a]) and prohibits "any person” to possess or transport any controlled substance except as expressly allowed by this article (§ 3304 [a]). Clearly, the defendant herein is not one of the persons envisioned or allowed by this article to control or possess controlled substances.
Moreover, section 3371 provides for disclosure of privileged *710 information pursuant to judicial subpoena or court order in a criminal investigation or proceeding.
In fact, Judge Simons of the Court of Appeals, in his dissenting opinion in Matter of Grand Jury v Kuriansky (69 NY2d, supra, at 243), refers the reader to statutes which supersede CPLR 4504, among them being Public Health Law § 3373.
Accordingly, in balancing the physician-patient privilege against the public’s interest regarding the prosecution of persons in possession of controlled substances, a condition that has reached epidemic proportions, the scales of justice will lean in favor of the public’s interest.
The fifth branch of the motion for a Huntley hearing is denied in that there were no statements made to law enforcement personnel.
The sixth branch of the motion for a Mapp hearing is granted to the extent that the hearing will be held at the court’s convenience prior to trial.
The seventh branch of the motion is to be regarded as a request for a bill of particulars pursuant to CPL 200.95 and as a demand for discovery pursuant to CPL 240.20.
The People are directed to comply with said request and said demand.
As to the eighth branch of the motion to provide exculpatory material, the People are aware of their duty to provide exculpatory material pursuant to Brady v Maryland (373 US 83).
The ninth branch of the motion for leave to make additional motions is granted to the extent indicated in CPL 255.20 (3).