OPINION OF THE COURT
Raymond Harrington, J.
This is a motion by the defendant, through his attorney, for an order granting leave to renew that portion of his prior omnibus motion which sought a dismissal of the instant indictment on the ground that the evidence presented to the Grand Jury was "legally defective” within the meaning of *250 CPL 210.20 (1) (b); 210.35 (5); and 190.25 (6). (See, CPLR 2221; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2221:9, at 160.) The defendant bases his motion on the discovery of "new evidence,” to wit: that a physician he had consulted for diagnosis and treatment of a blood pressure problem gave testimony before the Grand Jury in violation of the physician-patient privilege of CPLR 4504 (a). (See, People v Gearhart, Nassau County Ct, Aug. 25, 1989, slip opn, at 3-6, Harrington, J.) Specifically, the defendant takes issue with this court’s ruling that invocation of the physician-patient privilege here was precluded because of the reporting provisions contained in Social Services Law §§413 and 415, both of which are integral parts of the Child Abuse Prevention Act of 1985 (as amended). The People have consented to the defendant’s request for renewal.
In support of his contention that sections 413 and 415 of the Social Services Law do not, and were never intended to, carve into the privileged communications statutes an exception for child abuse cases, the defendant has submitted an affirmation and memorandum of law by his attorney, Michael G. Dowd, Esq., and an amicus curiae brief from the New York State Association of Criminal Defense Lawyers[1] (by Jonathan C. Scott, Esq.). Through those submissions, the defendant argues: (1) that, in People v Bass (140 Misc 2d 57 [Sup Ct, Bronx County 1988]), Justice Irene J. Duffy specifically ruled that Social Services Law § 413 does not limit the physician-patient privilege in criminal cases (whereas, in People v Gwaltney [140 Misc 2d 74 (Sup Ct, Queens County 1988)], a case cited by this court in its prior decision herein, "the issue of privilege was never raised”); (2) that, exceptions to the long-standing and wide-ranging physician-patient privilege in New York must be specifically created by the Legislature, and not by the courts through radical statutory interpretation or judicial fiat; (3) that, the admission of a physician’s testimony in a criminal case involving child abuse is against public policy in that it would prevent treatment by health care professionals of persons who could be prevented by that intervention from again *251 committing an act of abusing a child. It is asserted that, the ultimate effect of this court’s prior holding will be to transform those best able to prevent further acts of child abuse (physicians, psychiatrists, psychologists, and social workers) into key prosecution witnesses, and thereby prevent those child abusers who are "aware of the law” from seeking psychiatric or other help, and will force attorneys representing clients accused of child abuse to advise those clients "to not seek medical or psychiatric help”; (4) that, a statutory duty to report suspected child abuse to some social services agency is, and was intended by the Legislature to be, distinct from the evidentiary privilege applicable in a judicial proceed- ' ing. It is argued that the Legislature intended that the privilege would not be applicable only to child protective proceedings under the provisions of the Family Court Act (see, Family Ct Act § 1046 [a] [vii]). This interpretation, it is contended, is the proper one because, inter alia, the true purpose for the enactment of the Child Protective Services title of the Social Services Law was to provide a method of interdiction through which an allegedly abused or maltreated child can be quickly removed from harm’s way; it was not meant to provide a vehicle for the criminal prosecution of the alleged abuser (see, Social Services Law § 411; mem of Attorney-General, May 3, 1979, re: L 1979, ch 81); and (5) that, constitutional due process is violated by suspension of the physician-patient privilege, in that "unsuspecting targets of the State” will be seeking medical or psychiatric help from "a health care professional turned quasi-police agent”.
In opposition to all of this, the People submit an affirmation from Assistant District Attorney Joseph R. Onorato. Through that document, the People argue that, (a) People v Bass (supra) need not be followed by this court; (b) People v Gwaltney (supra) is apposite to the instant matter and should be followed; and (c) citing Matter of Grand Jury Investigation of Onondaga County (59 NY2d 130), "an exception has already been carved out of CPLR Secton 4504 [sic] by the Legislature when it enacted the Social Services Law”.
In view of the way the issue of preclusion of the physician-patient privilege first came to light herein (see, People v Gearhart, supra), and considering the potentially far-reaching effects (both obvious and subtle) that this court’s prior decision may have, leave to renew that portion of the defendant’s omnibus motion seeking dismissal of the instant indictment is granted. (CPL 60.10; CPLR 2221.) This court has carefully *252 reviewed and considered the well-reasoned and thorough arguments put forward by counsel for the parties and by the amicus curiae. Based upon that review and consideration, and upon extensive independent research, it is the conclusion of this court that the original decision of August 25, 1989 will be adhered to. What follows is a further exposition of the bases for that decision.
PHYSICIAN-PATIENT PRIVILEGE
The physician-patient privilege is purely a creation of the Legislature. (Dillenbeck v Hess, 73 NY2d 278, 283-286 [1989]; Matter of Camperlengo v Blum, 56 NY2d 251, 254 [1982].) It may therefore be precluded or limited by other specific later-enacted provisions. (Fisch, New York Evidence § 541; Richardson, Evidence § 426 [Prince 10th ed]; Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 135-136 [1983], supra; McKinney’s Cons Laws of NY, Book 1, Statutes § 2.) In section 444-A of the 1985 Cumulative Supplement to the tenth edition of Richardson, Evidence, eight statutes with such a preclusive effect are listed. (See also, Fisch, New York Evidence §§ 547-550; Matter of Grand Jury Investigation of Onondaga County, supra, at 135-136.) Among them are the reporting provisions of the Social Services Law concerning suspected cases of child abuse and maltreatment. (Social Services Law §§ 413, 415.) This court had concluded that, through these enactments, the Legislature demonstrated an intention to suspend the application of the physician-patient privilege in all judicial proceedings involving child abuse or maltreatment. (People v Gearhart, slip opn, supra, at 5.) The defendant now argues that the Legislature intended only a limited preclusion, and never intended to eliminate from criminal prosecutions the confidentiality of communications between physician and patient. To do so, it is urged, is contrary to public policy which, it is alleged, in general mandates child safety, family unity, and treatment (not punishment) for the alleged abuser.
In seeking the intention of the Legislature, it is the obligation of a court to read and interpret the several aspects of a particular statutory enactment as a consistent whole. Furthermore, the statute must be read and interpreted in a manner which is consistent with other statutes related to it by subject matter or which are in pari materia, to thereby attempt to avoid absurd or incongruous constructions. (McKinney’s Cons Laws of NY, Book 1, Statutes §§96-98, 145, 221-223.) To *253 accomplish these ends, it is proper for the court to consider the construction placed on similar statutes in other jurisdictions, particularly where there is no State appellate authority. (McKinney’s Cons Laws of NY, Book 1, Statutes § 262; People v Meikrantz, 77 Misc 2d 892, 894-895 [Broome County Ct 1974].) Here, as the defendant rightly points out, one obvious purpose of the child abuse reporting statutes is to provide a means by which an abused or maltreated child can be rapidly removed from harm’s way, to thereby interdict any immediate future abuse and insure the child’s safety. (See, Social Services Law § 411 [as added by L 1973, ch 1039, § 1]; see generally, Annotation, 73 ALR4th 782; Agatstein, Child Abuse Reporting in New York State: The Dilemma of the Mental Health Professional, 34 NY L Sch L Rev 115.) That clear purpose is by no means inconsistent with the further purpose of preventing the recurrence of abusive acts toward the child, either through proceedings in the Family Court or through prosecution of the alleged abuser in a criminal court, whichever is deemed appropriate in the particular case by the responsible authorities. (See, for example, People v Battaglia, 156 Cal App 3d 1058, 203 Cal Rptr 370, 373 [1984]; State v Fagalde, 85 Wash 2d 730, 539 P2d 86, 90 [1975]; McKinney’s Cons Laws of NY, Book 1, Statutes § 262.) The overriding purpose of the child abuse reporting statutes is to protect children from both immediate and recurrent abuse. Maintenance of the family unit and specialized treatment for the child abuser are not the only, or even necessarily the best, next steps in protecting an abused child from further abuse. Identification and criminal prosecution of the abuser is contemplated in our statutory scheme as an additional means of achieving at least one of the prongs of the statutes’ ultimate and overriding purpose. (See, People v Stritzinger, 137 Cal App 3d 126, 186 Cal Rptr 750, 752 [1982].) The interest in encouraging the child abuser to seek treatment may certainly be subordinated by the Legislature to this aim. (See, State v Brydon, 626 SW2d 443, 451 [Mo 1981] ["It may be that the predecessor enactments * * * served a more pristinely sociological purpose * * * To those features the (amended) law adds the possibility of punishment.”]). The foremost reason for the statutes’ existence is to protect children from abuse, not to insure that children’s abusers seek or receive medical or psychiatric help. The Legislature may properly accomplish this by facilitating a prosecutor’s access to relevant damning evidence, and thus make somewhat easier the prosecution of cases renowned for *254 their difficulty of proof. (See, for example, the comments of App Div, 2d Dept, Assoc J. Miller, excerpted in NYLJ, June 26, 1990, at 2, cols 3-4; note also, People v Bass, 140 Misc 2d, supra, at 62-63 [Duffy, J.]; Agatstein, op. cit., at 137, n 96; Capra, Hearsay Exceptions in Child-Abuse Prosecutions, NYLJ, Oct. 13, 1989, at 3, col 1; Capra, Innovations in Prosecuting Child Sexual Abuse, NYLJ, Nov. 9,1989, at 3, col 1.)
A fair reading of the relevant statutes, as amended since first enacted in 1973, supports such a conclusion. This court had previously noted, "The legislative policy of precluding the physician-patient privilege in instances of alleged child abuse is so strong that a person who willfully fails to report a case of suspected child abuse shall be guilty of a Class A Misdemeanor. [Social Services Law, Section 420 (1).]” (People v Gearhart, slip opn, supra, at 5.) To that, the following indicators must also be added. First, the report required to be made by the physician must contain, among other things, the name of the suspected abuser and any statements he or she may have made. Further, the report is specifically made admissible in evidence "in any proceedings relating to child abuse or maltreatment.” (Social Services Law § 415 [emphasis added]; Agatstein, op. cit., at 124-125.) The statute also contains an immunity provision to insulate the reporter from any civil or criminal liability which might otherwise be a result of his or her report. (Social Services Law § 419.) This indicates that "reports concerning statements made by the perpetrator are contemplated, even though they would otherwise be privileged.” (State v Fagalde, 85 Wash 2d, at 736, 539 P2d, at 90, supra; see also, People v Stritzinger, supra, at 752.) Finally, access to these reports (and thus to statements, if any) is given to both Grand Juries, and District Attorneys (Social Services Law § 422 [4] [A] [f], (l] [as amended by L 1985, ch 677, § 10]). The purpose for that amendment was unmistakably stated by Governor Cuomo upon approving the Child Abuse Prevention Act of 1985: "[to] improve the ability of law enforcement officials to investigate and prosecute child abuse cases” (1985 McKinney’s Session Laws of NY, at 3315).
Thus, taken as a whole, it is clear to this court that, in enacting then amending the Child Protective Services title to the Social Services Law, one of the purposes of the Legislature was to facilitate the criminal prosecution of alleged child abusers by identifying those persons to authorities and by providing prosecutors with all available evidence of the alleged wrongdoing. To that end, the Legislature intended to *255 preclude the application of the physician-patient privilege in "any proceedings relating to child abuse or neglect”, including criminal prosecutions, where the defendant’s statements trigger the requirement to report. (Social Services Law §§413, 415, 422 [4]; see, People v Gwaltney, 140 Misc 2d 74, 76-77, supra; see also, for example, State v Odenbrett, 349 NW2d 265, 268 [Minn 1984] ["Information which is sheltered by the statutory medical privilege loses its privileged status to the extent its disclosure is authorized (or required) by the Child Abuse Reporting Act”]; People v Stritzinger, supra, at 752; People v Battaglia, supra, at 373; see also, Annotation, 73 ALR4th 782, § 42, at 844-845, citing People v Younghanz, 156 Cal App 3d 311, 202 Cal Rptr 907; People v John B., 192 Cal App 3d 1073, 237 Cal Rptr 659.)
With all respect due Justice Duffy, this court does not concur in her conclusion in People v Bass (supra), a case heavily relied upon by the defendant. As set forth above, it is the view of this court that an intention by the Legislature to preclude application of the physician-patient (and other) privileges to child abuse cases is apparent strictly as a matter of statutory interpretation. This court is also of the view that there exist "public interest” exceptions to the physician-patient privilege (see, People v Brown, NYLJ, June 25, 1990, at 27, col 6; People v Gomez, 147 Misc 2d 704; People v Fonseca, 134 Misc 2d 1078, 1079-1080, citing Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, Y, M.D., P. C. v Kuriansky, 69 NY2d 232, 243 [Simons, J., dissenting]), and that child abuse (i.e., the prevention of child abuse and the prosecution of child abusers) constitutes one of them.
The "public interest” limitation on the physician-patient privilege has been recently explored in a series of cases involving the illegal possession of controlled substances. (See, People v Brown, supra; People v Gomez, supra; People v Fonseca, supra; contra, People v Saaratu, 143 Misc 2d 1075; see generally, Heymann, How Do Illegal Drugs in the Body Affect the Physician-Patient Privilege?, NYLJ, June 8, 1990, at 1, col 1; see also, Richardson, op. cit., § 444-A; Fisch, op. cit., § 548.) There, the courts interpreted various analogous provisions of Public Health Law article 33 and found, even absent any independent requirement to report, that the preclusion provisions of Public Health Law § 3371 (1) (b) and § 3373 were applicable as a matter of law to criminal prosecutions under Penal Law article 220. (People v Brown, supra; People v Fonseca, supra, at 1080.) Principal among the reasons for that *256 holding was a finding, as gleaned from a reading of the statutes, that the Legislature never intended the statutes to be mutually exclusive and that the public interest in prosecuting persons in possession of controlled substances outweighed any benefits to be derived from continuing the confidentiality of physician-patient communications. (People v Brown, supra; People v Gomez, supra; People v Fonseca, supra.) Those courts ultimately reasoned that, “ '[i]t could not have been intended by the Legislature that in such a case the [privilege] * * * should be the means of protecting a criminal from just punishment.’ ” (Heymann, op. cit., at 4, col 6, quoting People v Lay, 254 App Div 372, 373, affd 279 NY 737; compare, People v Bass, 140 Misc 2d, supra, at 62-63 [Duffy, J.], and Croigney v Defeo, NYLJ, Apr. 3, 1990, at 31, col 4 [Brucia, J.], citing Dillenbeck v Hess, 73 NY2d 278, 291 [Bellacosa, J., dissenting].) Thus, a superceder provision contained in an article of the Public Health Law ostensibly dealing with the licensing of physicians and the monitoring of the possession and dispensing of controlled substances by those licensees is, in the public interest, made applicable to criminal prosecutions for controlled substance offenses under the Penal Law. By the same reasoning, the preclusion provision contained in the reporting section of the Social Services Law and in the related provisions of the Family Court Act[2] concerning the abuse or mal *257 treatment of children should, in the public interest, be made applicable to a criminal prosecution of the alleged abuser pursuant to the provisions of the Penal Law. In view of the mandatory, detailed reporting provisions of the Social Services Law and the overriding purpose for the enactment of those provisions (discussed above), to conclude otherwise would seem to be either tragically shortsighted or unjustifiably hypertechnical. (Note again, People v Bass, supra, at 62-63.) There is clearly an abiding public interest in protecting our children from what appears to be a swelling tide of increasingly vicious physical and sexual abuse directed toward them. (See, Social Services Law § 411; 1984 McKinney’s Session Laws of NY, Legis mem, at 3486; cf, Agatstein, op. cit, at 120-121, and n 22.) The Legislature has determined that criminal prosecution is one means by which to provide them with protection from recurrent abuse. (See, Social Services Law §§ 413, 415, 422 [4] [A] [f], [,l].) It is thus in the public interest to facilitate the provisions of that protection by preclusion of the physician-patient privilege in child abuse prosecutions.
Finally, support for this court’s conclusion herein (and in the original order of Aug. 25, 1989) can be found in the appellate experiences of other jurisdictions in treating their respective child abuse reporting statutes. The cases annotated in section 3 of the Annotation at 44 ALR4th 649 (Validity, Construction and Application of Statute Limiting Physician-Patient Privilege in Judicial Proceedings Relating to Child Abuse or Neglect) are instructive although none is directly in point. In the cases reviewed by this court from the States of California, Washington, Missouri, and Minnesota, for instance, the structure and content of the respective child abuse reporting statutes were remarkably similar to that in New York. The location of the particular privileged communication preclusion provision varied — variously appearing in the particular States’ equivalent of our Social Services Law article 400, our CPLR article 45, or our Penal Law, or appearing as a singular legislative enactment apparently attached to no particular category of statute. What is striking is the similarity of the wording of these preclusion provisions to our own — "any court” or "any [judicial] proceeding relating to child abuse or neglect.” (See, Social Services Law § 415; Family Ct Act § 1046 [a] [v], [vii].) The highest courts in each of these States inter *258 preted their statutes to allow, in criminal trials relating to child abuse, testimony by physicians, psychiatrists or social workers that would otherwise be privileged. Furthermore, in two cases reviewed by this court from the State of Minnesota (State v Odenbrett, 349 NW2d, supra, at 268; see also, State v Andring, 342 NW2d 128, 132-133), the Supreme Court of Minnesota held that the reporting act itself, without more, abrogated the statutory medical privilege to the extent that "evidentiary use is made of information required to be contained in the maltreatment report.” (See also, People v Younghanz, supra; People v John B., supra, cited in 73 ALR4th 844.) In this State, that would allow the testimony of a physician before the Grand Jury as to incriminating statements made to him by a defendant where those statements were the impetus for the statutorily required report of suspected child abuse or maltreatment. (See, Social Services Law §§ 413, 415, 422 [4] [A] [f].) Finally, in each of these States, the courts confronted issues ancillary to their interpretations of the statutes and their respective Legislature’s intent in enacting them — a due process-Mirarcda-style Fifth Amendment challenge, an equal protection challenge, a right to privacy challenge, a public policy (treatment over punishment) challenge; in short, many of the same broader issues foreseen or specifically raised by the defendant and the amicus curiae herein. Each was rejected on well-reasoned grounds, appropriate for application to the instant case. Specifically, the defendant’s challenge (through the amicus curiae) on due process grounds is rejected. (People v Gwaltney, 140 Misc 2d, supra, at 77; People v Battaglia, supra, at 374-375; State v Ward, 745 SW2d 666, 668-669 [Mo 1988]; State v Brydon, supra, at 449; see also, Annotation, 73 ALR4th 782, at 813-814, § 5.)
MARITAL PRIVILEGE
Almost as an afterthought, at the conclusion of his memorandum of law, the defendant seeks to have this court reconsider its ruling respecting the inapplicability of the marital privilege. (People v Gearhart, slip opn, supra, at 6-7.) The reason for this apparent request for reargument is evidently contained in two cited cases the defendant wishes the court to consider. (CPLR 2221; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2221:7, C2221:8, at 157, 158.) Although not properly raised, in its discretion, this court has considered the cases posited by the defendant. The original decision of August 25, 1989 will be adhered to. (See, *259 People v Gomez, 112 AD2d 445, 447 [2d Dept 1985]; People v Allman, 41 AD2d 325 [2d Dept 1973]; Richardson, op. cit., §§445, 446.)
Based upon the foregoing, the defendant’s renewal of his motion to dismiss the indictment is in all respects denied.

. The New York State Association of Criminal Defense Lawyers is a "voluntary organization comprised of egalitarians committed to upholding the Constitutional, statutory and common law rights of individuals accused of offenses against society. Further, the association acts to safeguard the public interest in instances where a criminal prosecution against an individual is recognized as posing a substantial threat to a larger segment of the community and/or is contrary to public policy.”

. "Written reports from persons or officials required by this title [Social Services Law, art 6, tit 6 (Child Protective Services)] to report shall be admissible in evidence in any proceeding relating to child abuse or maltreatment.” (Social Services Law § 415.)
"In any hearing under this article [Family Ct Act art 10 (Child Protective Proceedings)] * * *
"(v) any report filed with the statewide central register of child abuse and maltreatment by a person or official required to do so pursuant to section four hundred thirteen of the Social Services Law shall be admissible in evidence; and * * *
"(vii) neither the privilege attaching to confidential communications between husband and wife, as set forth in section forty-five hundred two of the civil practice law and rules, nor the physician-patient and related privileges, as set forth in section forty-five hundred four of the civil practice law and rules, nor the psychologist-client privilege, as set forth in section forty-five hundred seven of the civil practice law and rules, nor the social worker-client privilege, as set forth in section forty-five hundred eight of the civil practice law and rules, shall be a ground for excluding evidence which otherwise would be admissible. ” (Family Ct Act § 1046 [a]; emphasis supplied.)
It should be noted further that the fact-finding hearing under article 10 of the Family Court Act is much more akin to a criminal proceeding than the defendant here would care to acknowledge. (See, Matter of Ella B., 30 NY2d
*257 352, 356-357 [1972]; Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1044, at 384.)