■ G.L., Appellant, v Shirley Markowitz, Respondent. [955 NYS2d 643]—

This action was commenced to recover damages for defamation and negligent and intentional infliction of emotional distress. The amended complaint alleged that the defendant, who described herself as a community volunteer, "recklessly, maliciously, and with flagrant disregard for the truth" made the "false" and "defamatory" statement that the then 13-year-old plaintiff "had sexual intercourse with her father." The amended complaint asserted that the defamatory statement was initially made in March 2005 and, "upon information and belief," the defendant repeated the alleged defamatory statement to others, causing "disgrace, humiliation, [and] disrespect" to the plaintiff within her Orthodox Jewish community. Further, the amended complaint asserted that the defamatory statements allegedly made by the defendant constituted slander per se.

The defendant moved, inter alia, pursuant to CPLR 3211 (a)

(7) to dismiss the amended complaint for failure to state a cause of action, and the Supreme Court granted that branch of the motion.

On a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the complaint a liberal construction (*see* CPLR 3026) and " 'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (*Nonnon v City of New York*, 9 NY3d 825, 827 [2007], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

The Supreme Court properly granted that branch of the defendant's motion which was pursuant to CPLR 3211 (a) (7) to dismiss the second cause of action, alleging negligent and intentional infliction of emotional distress. Accepting the allegations in the amended complaint as true, they fail to state a cause of action to recover damages for negligent or intentional infliction of emotional distress (*see McGovern v Nassau County Dept. of Social Servs.*, 60 AD3d 1016, 1018 [2009]; *Tartaro v Allstate Indem. Co.*, 56 AD3d 758, 759 [2008]).

However, the Supreme Court erred in granting that branch of the defendant's motion which was pursuant to CPLR 3211 (a) (7) to dismiss the first cause of action, which sought to recover damages for defamation. "Making a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation" (*Thomas H. v Paul B.*, 18 NY3d 580, 584 [2012]; *see Katapodis v Brooklyn Spectator, Inc.*, 287 NY 17, 20 [1941] [a statement is defamatory "not only if it brings a party into hatred, ridicule or contempt by asserting some moral discredit upon his part, but also if it tends to make him be shunned or avoided, although it imputes no moral turpitude to him"]). While "[s]lander as a rule is not actionable unless the plaintiff suffers special damage," an exception to that rule exists for statements "imputing unchastity to a woman," which statements would constitute "slander per se" (*Liberman v Gelstein*, 80 NY2d 429, 434, 435 [1992]). It is for the court to determine in the first instance whether the particular challenged statements are susceptible of a defamatory meaning (*see Aronson v Wiersma*, 65 NY2d 592, 593 [1985]; *Tracy v Newsday, Inc.*, 5 NY2d 134, 136 [1959]; *Knutt v Metro Intl., S.A.*, 91 AD3d 915, 916 [2012]). "If the contested statements are reasonably susceptible of a defamatory connotation, then 'it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average [listener]' " (*James v Gannett Co.*, 40 NY2d 415,

419 [1976], quoting *Mencher v Chesley*, 297 NY 94, 100 [1947]; *see Knutt v Metro Intl., S.A.*, 91 AD3d at 916).

Applying these principles here, and accepting the facts alleged in the amended complaint as true, the plaintiff has alleged a statement made by the defendant that could be reasonably susceptible of a defamatory connotation, specifically, imputing unchastity to the infant plaintiff, so as to state a cause of action for slander per se. Furthermore, as required by CPLR 3016 (a), the cause of action to recover damages for defamation set forth the "particular words" alleged to be false and defamatory.

Our dissenting colleague posits that the challenged statement cannot be reasonably understood as imputing unchastity to the infant plaintiff because "unchastity cannot be imputed to a female as a result of intercourse involving the crimes of rape and incest." Conceivably, a statement asserting that a female had been the victim of a sex offense would not be susceptible of a defamatory meaning because it could not reasonably be interpreted by the ordinary listener as imputing unchastity to that individual. However, in assessing potential defamatory meaning, we must look to the particular words used, and, here, it was not alleged that the defendant stated that the plaintiff had been the victim of a sex offense, or even that the plaintiff's father had engaged in inappropriate sexual conduct with her. Rather, as alleged in the complaint, the defendant stated that "[the plaintiff] had engaged in sexual intercourse with her father." Of course, by operation of law, the plaintiff was incapable of consenting to such conduct (*see* Penal Law § 130.05 [3]), and if such conduct did, in fact, occur, the plaintiff would have been the victim of rape (*see* Penal Law § 130.30 [1]), among other offenses. However, the dissent's position is entirely reliant upon this legal incapability of consenting to sexual conduct, whereas, in assessing potential defamatory meaning, the words must be "tested against the understanding of the average reader [or listener]" (*Aronson v Wiersma*, 65 NY2d at 594). The average listener, a lay person not trained in the law, upon hearing the statement "[the plaintiff] had engaged in sexual intercourse with her father," might not interpret the statement to mean that the plaintiff had been the victim of rape due to her legal incapability of consenting to such conduct. The fact that any other interpretation would be incorrect from a legal standpoint does not alter our analysis of "the understanding of the average [listener]" (*id.*; *see November v Time Inc.*, 13 NY2d 175, 178-179 [1963] ["The words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are ad-

dressed"]; *see generally James v Gannett Co.*, 40 NY2d at 420 ["It is the duty of the court, in an action for (defamation), to understand the publication in the same manner that others would naturally do" (internal quotation marks omitted)]). Moreover, while it might ultimately be determined that another interpretation was not "the sense in which the words were likely to be understood by the ordinary and average [listener]," due to the plaintiff's age or other contextual facts (*James v Gannett Co.*, 40 NY2d at 419 [internal quotation marks omitted]), in the context of this CPLR 3211 (a) (7) motion, the Court is limited to assessing whether the plaintiff's allegations were sufficient to state a cause of action for defamation.

Additionally, the dissent invokes a definition of the term "chaste" and asserts that the plaintiff cannot be viewed as unchaste since she did not voluntarily have sexual intercourse. We note that the same dictionary our dissenting colleague relies on defines the term "chastity" as, inter alia, "that virtue which prevents the unlawful intercourse of the sexes; the state of purity or abstinence from unlawful sexual connection" (Black's Law Dictionary 236 [6th ed 1990]). Thus, to the extent that a dictionary definition may be relied upon, the definition provided in the cited dictionary is ambiguous and inconclusive.

While the dissent further posits that permitting this action to survive past the pleading stage might have a chilling effect on the reporting of suspected cases of child abuse, our holding here is limited to the particular defamatory statement as alleged in the complaint. Again, that statement was that "[the plaintiff] had engaged in sexual intercourse with her father." The complaint did not allege that the statement was intended as, or constituted, a report that the plaintiff had been the victim of a sex offense or of child abuse. We express no opinion as to the potential defamatory meaning of any statement other than that alleged in the complaint. We further note that a qualified privilege protects certain individuals from civil liability arising from reports of child abuse that are based on reasonable cause and made in good faith (*see* Social Services Law § 419; *Biondo v Ossining Union Free School Dist.*, 66 AD3d 725 [2009]).

In sum, in the context of this CPLR 3211 (a) (7) motion, in which we determine only whether the allegations state a cognizable cause of action, we cannot say that the plaintiff's allegations failed to state a cause of action to recover damages for slander per se. Skelos, J.P., Balkin and Leventhal, JJ., concur.

Roman, J., concurs in part and dissents in part, and votes to affirm the order insofar as appealed from, with the following memorandum: I respectfully disagree with the majority's conclu-

sion that the amended complaint states a cause of action to recover damages for slander per se based upon a statement allegedly imputing unchastity to the plaintiff. The allegedly defamatory statement, which was made by the defendant to the then-13-year-old plaintiff's grandmother and school officials, revealed that the plaintiff was being sexually abused by her father. As will be discussed in greater detail, unchastity cannot be imputed to a female as a result of intercourse involving the crimes of rape and incest. The allegedly defamatory statement thus does not qualify as slander per se, and the plaintiff has not pleaded special damages. Therefore, the defamation claim must be dismissed for failure to state a cause of action.

The amended complaint in this case alleged, in pertinent part, that in March 2005 the defendant, "representing herself to be a representative of or in some way working with the Kiryas Joel Union Free School District . . . and/or the Beth Rachel School," placed a telephone call to the then-13-year-old plaintiff's grandmother, R.L. During this phone call, the defendant allegedly "recklessly, maliciously and with flagrant disregard for the truth, disseminated to [R.L.] the false, slanderous and defamatory allegation" that the plaintiff "had sexual intercourse with her father." The affidavit of the plaintiff's grandmother, and the order appealed from, indicate that the plaintiff's father allegedly confessed in June 2005 that he had sexual intercourse with the plaintiff, although he subsequently retracted his confession. The amended complaint alleged that "one of the fundamental principles" within the plaintiff's community "is the strict mandate that women and girls must remain chaste until they are married," and that "allegations that an unmarried infant girl . . . had lost her virginity prior to marriage" would cause "irreparable damage to the young girl's reputation and standing in the community." The amended complaint alleged that the statement at issue constituted slander per se. In addition, it was asserted, "[u]pon information and belief," that the defendant repeated the alleged statement "to other persons, including officials of the School District and Beth Rachel School," causing "disgrace, humiliation, disrespect and extraordinary irreparable damage to Plaintiff's reputation and standing in the community."

"Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace" (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435, 444 [2002]; *see Thomas H. v Paul B.*, 18 NY3d 580, 584 [2012]). "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance.

The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader [or listener], and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction" (*Aronson v Wiersma*, 65 NY2d 592, 593-594 [1985] [citations omitted]; *see James v Gannett Co.*, 40 NY2d 415, 419-420 [1976]; *Wilcox v Newark Val. Cent. School Dist.*, 74 AD3d 1558, 1560-1561 [2010]; *Allen v CH Energy Group, Inc.*, 58 AD3d 1102, 1103 [2009]).

"[A] plaintiff alleging slander must plead and prove that he or she has sustained special damages, i.e., 'the loss of something having economic or pecuniary value,' " unless the defamatory statement falls into one of the categories of slander per se (*Rufeh v Schwartz*, 50 AD3d 1002, 1004 [2008], quoting *Liberman v Gelstein*, 80 NY2d 429, 434-435 [1992]; *see Epifani v Johnson*, 65 AD3d 224, 234 [2009]). Among the recognized categories of slander per se, and the only one at issue here, are statements imputing unchastity to a woman (*see Liberman v Gelstein*, 80 NY2d at 435; *Epifani v Johnson*, 65 AD3d at 234).

Here, accepting the facts alleged in the amended complaint as true, and according the plaintiff the benefit of every favorable inference as required on a motion to dismiss pursuant to CPLR 3211 (a) (7) (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), I conclude that the amended complaint fails to state a cause of action to recover damages for slander per se.

The alleged statement, that the plaintiff "had sexual intercourse with her father," was allegedly made by a representative of the plaintiff's school district to school officials and the plaintiff's paternal grandmother, R.L., in a private telephone conversation. No reasonable listener could have understood the statement to impute unchastity in the context in which the words were spoken (*see Aronson v Wiersma*, 65 NY2d at 594; *see generally Qureshi v St. Barnabas Hosp. Ctr.*, 430 F Supp 2d 279, 288 [SD NY 2006]). Indeed, the alleged defamatory statement revealed that the then-13-year-old plaintiff had been the victim of the crimes of rape and incest by the child's father (*see* Penal Law §§ 130.30 [1]; 255.26). The legal definition of "chaste," as provided by Black's Law Dictionary, is stated in toto as "[n]ever *voluntarily* having had unlawful sexual intercourse" (Black's Law Dictionary 236 [6th ed 1990] [emphasis added]). Moreover, "chastity" is defined as the "[q]uality or state of being chaste" (*id.*). Unchastity may be imputed from statements alleging prostitution, promiscuity, or voluntary sexual behavior (*see e.g. Walia v Vivek Purmasir & Assoc., Inc.*, 160 F Supp 2d 380, 394-

395 [ED NY 2000]; *cf. James v Gannett Co*, 40 NY2d at 420; *Bement v N.Y.P. Holdings*, 307 AD2d 86, 92 [2003]; *but see Rozanski v Fitch*, 134 AD2d 944, 946 [1987]). However, unchastity cannot be imputed to a woman as a result of having been the victim of a sex crime (*see Snyder v Lamb*, 2003 WL 1194903, \*14, 2003 Cal App Unpub LEXIS 2558, \*46 [Ct App 2003] ["A victim of a sex crime is not considered unchaste"], citing *Rocky Mtn. News Print. Co. v Fridborn*, 46 Colo 440, 450, 104 P 956, 960 [1909] ["An unmarried female . . . who has been carnally known against her will, and as a result thereof becomes a mother, has not thereby lost her virtue, nor her chastity"]; *cf. Lemacks v State of Georgia*, 207 Ga App 160, 161, 427 SE2d 536, 537 [1993] ["It is no reflection on character that one has been an unwilling victim of prior crimes"]; *Summitt v State of Nevada*, 101 Nev 159, 164, 697 P2d 1374, 1378 [1985, Steffen, J., concurring in part and dissenting in part] [finding that the child-victim's reputation would have been unaffected by a disclosure that she had been the victim of a prior sexual assault]). Here, since the plaintiff was under the age of 17, she was incapable, as a matter of law, of consenting to sexual contact (*see* Penal Law § 130.05 [3] [a]; *Matter of Jessie C.*, 164 AD2d 731, 735 [1991]).

Contrary to the majority's conclusion, the alleged statement is not reasonably susceptible of a defamatory connotation, as the plaintiff was allegedly the victim of a sex crime. In fact, as noted by the motion court, if the statement was defamatory to any person, it was solely defamatory to the plaintiff's father as the alleged perpetrator of the sexual abuse (*see Cruz v Latin News Impacto Newspaper*, 216 AD2d 50, 52 [1995] ["Plaintiff's claim that the statement, attributed to her, that her husband infected her as the result of patronizing prostitutes was defamatory, could be defamatory as to him, not her" (emphasis omitted)]; *see also Sarwer v Conde Nast Publs.*, 237 AD2d 191, 191 [1997] [statements published in the defendants' magazine, Vanity Fair, in 1989, if referable to the plaintiff, were not susceptible of a defamatory connotation: "the effect of the article as a whole being to leave the reader with only sympathy for plaintiff as a victim of child abuse"]).

Although in *Katapodis v Brooklyn Spectator, Inc.* (287 NY 17 [1941]), the Court of Appeals held that a statement may be defamatory if it portrays the plaintiff as an object of pity, unlike the present case, *Katapodis* involved libel, and not the specific categories of slander per se (*id.* [addressing whether a written publication from 1940 referencing the plaintiff's dire financial situation constituted libel]). Since the alleged statement did not impute unchastity to the plaintiff, and therefore, does not fall

within a category of slander per se, the statement is not actionable in the absence of an allegation of special damages, regardless of whether the statement exposed the plaintiff to contempt and ridicule, or portrayed her as an object of pity (*see Liberman v Gelstein*, 80 NY2d at 435-436; *Klein v McGauley*, 29 AD2d 418, 421 [1968] ["Contrary to the law of libel, the spoken word which results only in the victim being held up to ridicule and contempt is never actionable in a slander suit without proof of special damage, unless it falls within one of several clearly defined categories"]; *Brzezinski v Tri-State Publ. Printing & Fulfillment, Inc.*, 2008 NY Slip Op 32754[U], *4 [Sup Ct, Suffolk County 2008] ["Any false publication by writing which exposes one to ridicule, hatred, contempt or obloquy, or causes him to be shunned or avoided, is libel per se, though if spoken it may be no slander. The definition of slander per se is not general, like that of libel, but is restricted and specific"]).

To find that the alleged statement is susceptible of the defamatory connotation that the plaintiff is unchaste could have a chilling effect on the reporting of suspected cases of child abuse (*cf. Dombrowski v Bulson*, 19 NY3d 347, 352 [2012] [expressing concern with the chilling effect of a ruling permitting the recovery of nonpecuniary damages for legal malpractice in a criminal case affecting the willingness of the defense bar to represent indigent defendants]). Such a result would run contrary to "New York's explicit and compelling public policy to protect children from the harmful conduct of adults" (*Matter of Binghamton City School Dist. [Peacock]*, 33 AD3d 1074, 1076 [2006]). Indeed, New York requires certain persons, including school officials, to report cases of suspected child sexual abuse, and provides those persons with qualified immunity from civil liability in connection with such reports made in good faith (*see* Social Services Law §§ 413, 419; *Mark G. v Sabol*, 93 NY2d 710, 721 [1999]; *Matter of Kimberly S.M. v Bradford Cent. School*, 226 AD2d 85, 88 [1996]; *see also Shapiro v Health Ins. Plan of Greater N.Y.*, 7 NY2d 56, 60 [1959], quoting *Bingham v Gaynor*, 203 NY 27, 31 [1911] [the qualified privilege " 'grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person' "]; *Silverman v Clark*, 35 AD3d 1, 11 [2006]). This information may assist law enforcement officials in investigating and prosecuting child abuse cases (*cf. People v Gearhart*, 148 Misc 2d 249, 254 [1990]).

The importance attached to the reporting of child abuse is

critical, given that "[c]hild abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim" (*Pennsylvania v Ritchie*, 480 US 39, 60 [1987]; *see Matter of Philip M.*, 82 NY2d 238, 243 [1993]). Moreover, the sexual abuse of children in family settings "is difficult to detect because the acts are predominantly nonviolent and usually occur in secret rendering the child the only witness" (*Matter of Nicole V.*, 71 NY2d 112, 117 [1987]). "A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent" (*Pennsylvania v Ritchie*, 480 US at 60). Therefore, it is essential that people be encouraged to report suspected cases of child sexual abuse (*see Pearson v Miller*, 211 F3d 57, 70-71 [3d Cir 2000]), without the fear of being subjected to litigation (*see Gross v Haight*, 496 So 2d 1225, 1228 [La Ct App 1986] ["It would be most unfortunate if the threat of defamation claims should cast a chilling effect upon the willingness of persons to report suspected cases (of child abuse), where reasonable cause for suspicion exists"]).

Accordingly, based on the foregoing, I find that the amended complaint fails to state a cause of action to recover damages for slander per se, and would affirm the order insofar as appealed from.